IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HAYLEY BARTA, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 3:24-cv-01335 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| SPECIALTYCARE, INC., ) | MAGISTRATE JUDGE NEWBERN |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Issuance of Court-Authorized Notice. (Doc. No. 36). Defendant filed a response in opposition (Doc. No. 47), and Plaintiffs filed a reply (Doc. No. 66). For the reasons discussed below, the motion will be **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND

Defendant provides intraoperative neurophysiological monitoring ("IONM") services to hospitals across the county, which involves monitoring and observing patients in operating rooms and communicating with doctors regarding changes in the nerve system function. (Doc. No. 37 at 3). Plaintiffs seek to represent a collective consisting of "[a]ll persons who worked for Defendant as salaried Surgical Neurophysiologists ("SNs") and were treated by Defendants as exempt within the United States at any time during the last three (3) years prior to the filing of this Complaint." (Doc. No. 33 ¶ 49). Plaintiffs contend that Defendant classifies its salaried SNs by various job titles, including SN II, SN III, Senior SN I, Senior SN II, and Senior SN III, but that each SN performed the same primary job duty of providing IONM services in operating rooms. (Doc. No. 37 at 1). Plaintiffs contend that all putative collective members are not paid for hours worked in

excess of 40 in a work week because Defendant uniformly classifies its salaried SNs as exempt from overtime under the FLSA.

Plaintiff Hayley Barta worked as an SN for Defendant from February or March 2017 to April 2024 in Tennessee and Kansas. During her employment with Defendant, Barta worked as an SN I, SN II, and SN III. (*Id.* at 4). Plaintiff Lindsay Lojewski worked as an SN III for Defendant in Maryland from August 2017 to October 2019. (*Id.* at 4). In July 2021, Lojewski worked as a SN III for Defendant in California. Plaintiff Lucas Barradas has worked for Defendant as an SN II and SN III in Pennsylvania since October 2016. (Doc. No. 38-5 ¶¶ 2-3, 6).

Plaintiffs bring claims against Defendant for failure to pay overtime in violation of the FLSA. Plaintiff Lojewski also brings claims for violation of California's wage and hour laws and requests that the Court certify a class of "[a]ll persons who worked for Defendant as salaried Surgical Neurophysiologists ("SNs") and were treated as exempt within the State of California at any time during the last four (4) years prior to the filing of this Complaint." (Doc. No. 33 ¶ 57). Plaintiff Barradas brings claims for violation of the Pennsylvania Minimum Wage Act and requests that the Court certify a class of "[a]ll persons who worked for Defendant as salaried Surgical Neurophysiologists ("SNs") and were treated as exempt within the State of Pennsylvania at any time during the last three years prior to the filing of this Complaint." (Doc. No. 33 ¶ 66).

In support of their motion, Plaintiffs submitted the declarations of the named Plaintiffs and 7 other salaried SNs assigned to various geographical markets and SN job positions. (Doc. No. 38-5). Plaintiffs also submitted Defendant's job postings for open SN positions, incentive pay program for exempt associates, including SNs II-IV, Senior SNs 1-III, SN Clinical Travelers, and IONM Clinical Managers, Defendant's IONM training program, and Defendant's IONM Career Ladder

2

Guideline.[1] (*See* Doc. Nos. 38-1, 38-2, 38-3, 38-4, 38-6). Plaintiffs contend that they and the putative collective members are similarly situated because they share the same primary job duty of providing IONM services, are similarly paid by salary, work overtime hours, and are subject to Defendant's uniform policy of being classified as exempt from overtime pay. (Doc. No. 37 at 10).

Plaintiffs also request that the Court authorize their proposed notice consisting of a 60-day notice period and approve notice via U.S. mail, email, and text message, along with a reminder notice via U.S. mail and email 21 days before the end of the notice period. Plaintiffs request that Defendant be required to disclose names and contact information for all putative collective members within 7 days of the Court's Order to effectuate notice.

Defendant opposes Plaintiffs' motion. (Doc. No. 47).

## II. STANDARD OF REVIEW

A collective action hinges on "employees receiving accurate and timely notice concerning [its] pendency ... so that they can make informed decisions about whether to participate." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). "That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* After notice has issued, employees have opted into the collective action, and discovery has continued, the district court determines—not conditionally, but conclusively—

---

[1] Plaintiffs also submitted evidence of job descriptions for SN II, SN III, and SN IV positions, which represent that these positions are classified as exempt and share the same essential duties and responsibilities.[1] (Doc. No. 38-4). However, Defendant contends that these job descriptions were discontinued in 2015 and are irrelevant to Plaintiffs' motion. The Court did not rely on this exhibit in its analysis and thus, need not address Defendant's argument.

whether the collective members are in fact "similarly situated" to the original plaintiffs. *Id.* at 1010-11.

## III. ANALYSIS

**A. Putative Collective Members**

Plaintiffs contend that they are similarly situated to putative collective members because they are all salaried employees classified as exempt from overtime pay and share the same primary job duties and responsibilities of providing IONM services.

"Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010. The Sixth Circuit considers the following factors to determine whether collection action members are similarly situated: "(1) the 'factual and employment settings of the individual[] plaintiffs'; (2) 'the different defenses to which the plaintiffs may be subject on an individual basis'; and (3) 'the degree of fairness and procedural impact of certifying the action as a collective action.'" *Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-CV-00210, 2023 WL 6096730, at *10 (M.D. Tenn. Sept. 18, 2023) (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017)). Further, "Plaintiffs are similarly situated if they can demonstrate that they suffered from 'a single, FLSA-violating policy' instituted by the employer defendant, or if their 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Clark*, 68 F.4th at 1010 (internal citations omitted).

Moreover, "[t]o warrant a finding that similarly situated employees exist, a plaintiff's declaration 'must at least allege facts sufficient to support an inference that she has actual

4

knowledge' about other employees' job duties, hours worked, and whether they were paid for overtime hours. A declaration that contains facts that support the inference that the plaintiff has actual knowledge of company-wide employment practices—such as first-hand observations or observations with co-workers—will typically be enough to show that a similarly situated class of employees exists." *Williams v. Premium Velocity Auto, LLC*, No. 3:23-CV-00901, 2025 WL 465311, at *4 (M.D. Tenn. Feb. 11, 2025) (internal citations omitted).

The declarations submitted by Plaintiffs and other salaried SNs describe various SN job descriptions at facilities throughout the country, including SN I[2], SN II, SN III, Senior SN, and Senior SN I. (Doc. No. 38-5). Each declarant states that their primary job duty as an SN was "to provide intraoperative neurophysiological monitoring ("IONM") services in the operating room… set up, maintain and break down diagnostic equipment, apply electrodes on patients in a timely and accurate manner and according to the type of surgery they are having… run tests during the course of the surgery, monitor, collect, and record data, prepare documentation, and ensure that the remote-based neurologist is online for the surgery." (*See generally* Doc. No. 38-5).

The declarations also provide that SNs' primary job duty of providing IONM services was the same regardless of the specific type of surgeries and locations. *Id.* Moreover, the declarations provide that the declarants are familiar with job duties of other SNs based on their personal knowledge, observations, and experiences, and because they trained with other SNs. *Id.* The declarations also state that Plaintiffs are paid by salary and worked over 40 hours during at least one workweek within the statutory period. *Id.*

Plaintiffs also submitted evidence of job descriptions for Defendant's SN positions throughout the country. (Doc. No. 38-2). Moreover, Plaintiff submitted documents regarding

---

[2] Plaintiffs concede that the SN I position is not included in the proposed collective definition because that position is paid hourly and classified as non-exempt. (Doc. No. 37 at 1).

Defendant's IONM training, which provide that "[t]he SN meets with the patient on the day of surgery to perform a brief evaluation, explain IONM and answer any questions that the patient and family may have. In the operating room, the SN prepares the patient for neuromonitoring by applying recording and stimulating electrodes, and operates a computerized IONM workstation to collect data using a variety of tests. The SN is supported online by physicians and other IONM professionals who use telemedicine technology to view the same nervous system activity and communicate with the SN in real time. Together this team collaborates to interpret the data and advise the surgical team of the patient's condition." (Doc. No. 38-1). The IONM training materials do not distinguish between SN job titles or indicate differences in job responsibilities based on SN job titles. Plaintiffs also point to evidence of Defendant's national incentive pay program which "is an incentive plan to reward regular (full & part time) exempt clinicians within the Neuro Services Service Line, IONM Product who assist with weekend call coverage, case pay-long or late, holiday pay, surgeon referrals or travel pay" and includes individuals in the following positions: SN II, SN III, SN IV, Senior SN I, Senior SN II, Senior SN III, SN Clinical Travelers, and IONM Clinic Managers. (Doc. No. 38-6).

In response, Defendant contends that "not all SpecialtyCare IONM associates who provide IONM services perform the same primary job duties and work overtime hours" and "[n]or does SpecialtyCare classify all employees within the SN II and SN III clinical classifications as exempt from overtime." (Doc. No. 47 at 1). Defendant also argues that Plaintiffs' proposed collective definition is "too imprecise and overbroad" because "it purports to encompass individuals who did not hold a SN job title, did not provide IONM services during the proposed collective period, did not work any overtime hours, and/or whose day-to-day primary duties were to perform a broad array of managerial and/or training duties in addition to providing IONM services, all of which

6

subject them to unique defenses based on one or more FLSA overtime exemptions." (*Id.*). Defendant also objects to the declarations submitted by Plaintiffs on the grounds that they contain improper legal argument and conclusions; speculation/inadmissible conclusions; inadmissible self-serving opinions; lack personal knowledge/foundation; and are irrelevant/misstate the evidence. (Doc. Nos. 51-61).

As an initial matter, the Court notes that despite filing separate objections to each declaration, Defendant primarily makes the same boilerplate objections to each declaration. The Court finds that Defendant's objections are premature, vague, and generalized, and can be further developed through discovery.

Nor is the Court persuaded by Defendant's argument that the putative collective members are not similarly situated to Plaintiffs. *Hendricks v. Total Quality Logistics, LLC*, No. 1:10CV649, 2023 WL 6217073, at *13 (S.D. Ohio Sept. 25, 2023) ("While Defendants have highlighted differences in specific job duties and variations in how some Junior LAEs were managed by their supervisors, these differences do not prevent collective treatment. '[P]laintiffs must only be similarly—not identically—situated to proceed collectively.' In addition, Defendants raise the same defense against every member of the class…Therefore, Defendants raise one defense and do not raise 'individualized defenses.' *See Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18CV2017, 2022 WL 17552396, at *12 (N.D. Ohio Dec. 9, 2022) ('Defendants state that they will raise [the administrative exemption] defense at trial, but do not explain how it constitutes an 'individualized defense' or cite any authority supporting the proposition that decertification is warranted where an employer argues that a collective class of employees are exempt from the FLSA's overtime provisions.'"). The declarations submitted by Plaintiffs provide that they are based on the declarants' own personal knowledge, experiences, and observations, including by training with

7

other SNs. (Doc. No. 38-5). The declarations submitted by Plaintiffs state that (1) primary job duties of SNs are the same across various SN positions and geographic locations; (2) as an SN, they were paid a salary; (3) they regularly worked in excess of forty hours per week; (4) they did not receive overtime pay for all overtime hours worked; (5) they trained with other SNs and observed that other SNs performed the job in the same manner; and (6) based on their personal observations and experiences, they believe that other SNs, many of whom are referenced by name, performed similar job duties and did not receive overtime pay. (*See generally* Doc. No. 38-5). The declarations are also sufficient to show that during the relevant time period, the named Plaintiffs and putative collective members were subject to Defendant's uniform policy of being classified as exempt from overtime pay.

Accordingly, the Court finds that Plaintiffs have shown a "strong likelihood" that putative collective members are similarly situated to the named Plaintiffs. *Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-CV-00210, 2023 WL 6096730, at *12 (M.D. Tenn. Sept. 18, 2023), *motion to certify appeal denied*, No. 3:23-CV-00210, 2023 WL 7101869 (M.D. Tenn. Oct. 27, 2023) ("The evidence presented, including the plaintiff's Declarations and the number of opt-in Consents to Join already filed, is sufficient to establish the requisite "strong likelihood" that the lead plaintiff, current opt-in plaintiffs, and potential opt-in plaintiffs are similarly situated employees under the FLSA.").

The Court further finds that Plaintiffs' proposed collective definition is appropriately tailored to include only salaried SNs within the United States treated as exempt during the last 3 years. (Doc. No. 33 ¶ 49).

To the extent Defendant argues that Plaintiffs' declarations are rebutted by countervailing evidence submitted by Defendant, the Court will not resolve credibility issues, factual disputes, or

8

questions regarding the merits at this stage. *Hogan v. Cleveland Ave. Rest., Inc.*, 690 F. Supp. 3d 759, 779 (S.D. Ohio 2023) ("Whether Plaintiffs' evidence conclusively proves Defendant Private Dancer's liability is undoubtedly a merits-based question unsuitable for this stage in the litigation. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013) (explaining that district courts m[u]st only consider at the class certification stage 'those matters relevant to deciding if the prerequisites of Rule 23 are satisfied.'"); *Polen v. JSW Steel USA Ohio, Inc.*, 699 F. Supp. 3d 622, 630 (S.D. Ohio 2023) ("Moreover, the Court's role at this stage, is not to 'consider the merits of the claims, resolve factual disputes, or decide substantive issues.' *Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 734 (S.D. Ohio 2016)…Instead, the relevant inquiry here is whether Plaintiff has shown that he and other employees are 'similarly situated' with respect to the common 'FLSA-violating policy' Plaintiff alleges."); *Kaufman v. Gardner Pie Co.*, No. 5:22CV2126, 2024 WL 895152, at *3 (N.D. Ohio Mar. 1, 2024) ("Much of Gardner Pie's opposition to the motion does not focus upon the merits of *notice*. Instead, the opposition focuses on Gardner Pie's belief that it has a merits defense to the entirety of the complaint. For example, Gardner Pie takes issue with the allegations of the manner in which allegations were made regarding production bonuses. However, the Court cannot resolve such a defense absent formal discovery and dispositive motion practice.").

Accordingly, based on the record, the Court finds that Plaintiffs have demonstrated that putative collective members are similarly situated to the named Plaintiffs.

**B. Plaintiffs' Proposed Notice**

Plaintiffs request that the Court authorize their proposed notice consisting of a 60-day notice period and approve notice via U.S. mail, email, and text message, along with a reminder notice via U.S. mail and email 21 days before the end of the notice period. Plaintiffs also seek an

order requiring Defendant to provide the names, last known mailing addresses, last known telephone numbers, last known email addresses, relevant job title(s), dates of employment in each relevant job title, and work locations for each putative collective member for the time period of three years from the date Plaintiffs filed their motion.

In response, Defendant argues that Plaintiffs' counsel has already sent out solicitation notices to putative collective members that Defendant contends "failed to conform to established standards for issuance of court-authorized notice and violated applicable rules of professional conduct" and that "[a]ny further notice to these individuals would constitute a 'reminder' notice that may be misconstrued as a court endorsement of this action or encouragement to putative plaintiffs to join this action." (Doc. No. 47 at 11, 20).

Defendant also argues that Plaintiffs' proposed notice is improper because it fails to inform putative collective members that they may retain their own counsel, fails to inform putative collective members that they may share in liability for payment of costs if Defendant prevails in this lawsuit, includes an overbroad anti-retaliation provision, and fails to include Defendant's contact information. In the event that the Court authorizes notice, Defendant requests additional time to submit a joint proposed notice.

Defendant also contends that notice via text message is improper, that email notice should only be sent to employees' personal email addresses and not to company-issued email addresses, that Plaintiffs' request to send a reminder notice should be denied, and that the Court should require a third party notice administrator regarding putative collective members' contact information.

The Court finds that the notices sent by Plaintiffs' counsel do not preclude sending court-authorized notice. *Heibel v. U.S. Bank Nat. Ass'n*, No. 2:11-CV-00593, 2012 WL 4463771, at *6 (S.D. Ohio Sept. 27, 2012) (internal citations omitted) ("[S]everal courts 'have found that pre-

10

certification communication with putative members of a collective action should be allowed unless the communication contradicts a court notice, is misleading, or improper.'…Similarly, this Court recently explained that 'a defendant does nothing wrong by communicating directly with someone who may become, but is not yet, a member of ... an opt-in class under 29 U.S.C. § 216(b).'… counsels' pre-certification communications with potential class members do not form an appropriate basis for either denying class certification or striking the current opt-in notices."); *Thompson v. Direct Gen. Consumer Prods., Inc.*, No. 3:12-CV-1093, 2014 WL 884494, at *10 (M.D. Tenn. Mar. 5, 2014) ("[P]recertification communications with potential class members are generally unobjectionable…"); *Tooker v. BlueJay Sols., Inc.*, 715 F. Supp. 3d 1022, 1026 (W.D. Mich. 2024) ("[P]re-certification communications with potential collective action members are generally permitted.").

The Court also finds that it is reasonable for Defendant to provide the information requested by Plaintiffs for each putative collective member. The Court is not persuaded that a third party notice administrator is necessary at this stage. *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 751 (M.D. Tenn. 2018); *see also Elmy v. W. Express, Inc.*, No. 3:17-CV-01199, 2019 WL 6715115, at *2 (M.D. Tenn. Dec. 10, 2019); *Rakowsky v. Fed. Express Corp.*, No. 23-CV-02340-TLP-TMP, 2024 WL 4360606, at *8 (W.D. Tenn. Sept. 30, 2024); *Headspeth v. TPUSA, Inc.*, No. 2:19-CV-2062, 2020 WL 4577491, at *2 (S.D. Ohio July 23, 2020).

Further, the Court approves notice via mail and email and finds that it is reasonable for notice to be sent to putative collective members' work email addresses. *Van Buren v. Historic Images, Inc.*, No. 220CV02917MSNCGC, 2022 WL 1632659, at *5 (W.D. Tenn. May 23, 2022) ("The law recognizes first class mail and email as viable channels for notice in FLSA actions.

After all, while first-class mail has often been referred to as the 'best notice practicable,' recent cases have held that email notification is also appropriate.").

However, Defendant objects to sending notice via text message, and Plaintiffs have failed to demonstrate that notice via text message is necessary at this juncture. *Vasser v. Mapco Express, LLC*, 546 F. Supp. 3d 694, 702 (M.D. Tenn. 2021) (internal citation omitted) ("Courts have 'discretion in deciding how notice is disseminated.' *Honaker*, 2020 WL 134137, at *3, and have 'routinely approved dual notification through regular mail and email.'…However, courts have regularly rejected notice 'by text message unless Plaintiff[s] can show that notice by postal and electronic mail is' returned as undeliverable."); *Loomis v. Unum Grp. Corp.*, 539 F. Supp. 3d 898, 911 (E.D. Tenn. 2021) ("[W]here defendants have objected to the use of text messages, the majority of courts in this district have declined to allow plaintiffs to notify putative class members via text message unless notice through other methods is ineffective." *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 WL 4667497, at *11 (S.D. Ohio Sept. 25, 2019)."); *see also Wells v. Cmty. Health Sys.*, 630 F. Supp. 3d 938, 946 (M.D. Tenn. 2022). Accordingly, Plaintiffs' request to send notice via text message is denied. However, if notice via mail and email is undeliverable, Plaintiff is permitted to seek leave from the Court to send notice via text message.

This Court has previously approved requests to send reminder notices to putative collective members in FLSA actions. *Wells v. Cmty. Health Sys.*, 630 F. Supp. 3d 938, 947 (M.D. Tenn. 2022) ("[C]ourts have significant discretion in approving reminder notices…Having considered the parties's arguments, including Defendants' contention that the same are redundant and could appear as if the Court is encouraging individuals to join the lawsuit, the Court will permit the sending of notices because the FLSA is a remedial statute."); *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 751 (M.D. Tenn. 2018) ("[Defendant] requests that the proposed notice not be

included in employee paychecks and that the Court reject Plaintiffs' request for the reminder notices… In the absence of any showing of prejudice, and because the FLSA requires that putative collective members be provided with notice of this lawsuit and apprised of their rights, the Court will approve the dissemination of Notice in the manner requested by Plaintiffs.").

Here, the Court finds that it is reasonable to send a reminder notice to putative collective members. Accordingly, the Court approves Plaintiffs' request to send a reminder notice 21 days before the close of the notice period. However, consistent with the Court's holding in *Wells v. Cmty. Health Sys.*, 630 F. Supp. 3d 938, 947 (M.D. Tenn. 2022), the Court finds that the reminder notice shall state that the Court does not take any position on the merits of the claims or defenses in this case, that whether to join is an individual decision, and that the reminder notice shall not be interpreted as the Court encouraging or discouraging any individual from joining the lawsuit.

With regard to Defendant's objections to the contents of Plaintiffs' proposed notice and Defendant's request for additional time to submit a joint proposed notice, the Court finds that it is appropriate for the parties to meet and confer regarding the contents of the proposed notice. Accordingly, the parties shall meet and confer regarding the content of the proposed notice and shall submit to the Court a joint proposed notice for approval within 14 days of this Order.

Within 14 days of the Court's order, Defendant must also provide to Plaintiffs' counsel an Excel spreadsheet containing the following information for each potential collective member: the names, last known mailing addresses, last known telephone numbers, last known email addresses, relevant job title(s), dates of employment in each relevant job title, and work locations.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion For Issuance of Court-Authorized Notice (Doc. No. 36) will be **GRANTED** in part and **DENIED** in part. Plaintiffs have demonstrated that

putative collective members are similarly situated to the named Plaintiffs for purposes of the FLSA, and accordingly, notice to putative collective members is appropriate. The Court approves notice via mail and email, as well as a reminder notice via mail and email 21 days before the close of the notice period. However, any reminder notice shall plainly state that the Court takes no position regarding the merits of the claims or defenses at issue, that whether to join this case is an individual decision, and that the reminder notice shall not be interpreted as the Court encouraging or discouraging any individual from joining the lawsuit.

The motion is **DENIED** as to Plaintiffs' request to send notice via text message. If notice via mail and email is undeliverable, Plaintiffs are permitted to file a motion requesting leave to send notice via text message. The motion is also **DENIED** without prejudice as to the contents of the proposed notice. The parties shall meet and confer regarding the content of the proposed notice and shall file a joint proposed notice for approval within 14 days of this Order.

Defendant also filed a motion for extension of time to file the opposition to Plaintiffs' motion. (Doc. No. 39). Plaintiffs filed a response in opposition (Doc. No. 42). Defendant's motion (Doc. No. 39) is **GRANTED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE